1999 OK CIV APP 108

STATE of Oklahoma, ex rel. Gene
HAYNES, District Attorney,
Plaintiff/Appellee,

v.

SIXTEEN THOUSAND EIGHT HUN-
DRED DOLLARS ($16,800.00),
Defendant,

and

Mark Murray and Warren Austin,
Respondents/Appellants.

No. 91,669.

Court of Civil Appeals of Oklahoma,
Division No. 1.

Aug. 27, 1999.

Richard O'Carroll, Sharisse O'Carroll, Tulsa, Oklahoma, For Appellants,

Charles A. Ramsey, Pryor, Oklahoma, For Appellee.

HANSEN, Presiding Judge:

¶ 1 On October 28, 1997, Appellants, Mark Murray (Murray) and Warren Austin (Austin) (collectively Appellants), residents of Michigan, were stopped by Oklahoma Highway Patrol Trooper Lavender while they were traveling on the Will Rogers Turnpike. Trooper Lavender testified he made the stop after the car which Appellants occupied twice crossed the lane line. Murray was the driver and Austin was the only passenger. Murray informed Trooper Lavender he did not have his drivers license with him and that the car belonged to his cousin.

¶ 2 Trooper Lavender, for verification, radioed in the information given him by Murray, and also requested the presence of Trooper Lambert in a K–9 unit. After issuing Murray a warning for improper use of lane, and while awaiting the arrival of Trooper Lambert, Trooper Lavender asked Murray if he had any drugs or weapons in the car. When Murray said no, Trooper Lavender asked Murray if he would consent to a search of the car. Murray declined to give consent.

¶ 3 When Trooper Lambert arrived, he was briefed by Trooper Lavender, and then had his dog go around the stopped vehicle. The dog jumped up with his front paws on the drivers' side door and on the rear bumper. Trooper Lavender testified Trooper Lambert then searched the car, finding what they thought to be marijuana residue on the front floorboard and the contested $16,800.00 in a garment bag in the trunk. Appellants were arrested and the property seized.

¶ 4 On October 30, 1997, Appellee, State of Oklahoma (State), filed a Notice of Seizure and Forfeiture, specifically naming Murray and Austin, and citing authority under the Controlled Dangerous Substances Act (the Act), 63 O.S. Supp.1997 §§ 2–101 *et seq.* The property made subject to forfeiture was the seized $16,800.00. Appellants remained confined in Mayes County at the time their preliminary hearing began on November 13, 1997.

¶ 5 After hearing evidence from Trooper Lavender, the preliminary hearing was continued until the next day. On November 14th, when the hearing reconvened, State moved to dismiss the criminal charges against Appellants because it felt "there may be insufficient evidence for a bind-over order." The trial court granted State's motion to dismiss and ordered Appellants released.

¶ 6 While there is nothing in the record actually documenting such an agreement, and despite what was stated on the record, Appellants clearly concede State dismissed the criminal charges against them based on their agreement not to contest the forfeiture. However, when State presented a proposed forfeiture journal entry of judgment to counsel for Appellants, he advised they had changed their minds. Appellants later filed an Answer and Claim in response to, and contesting, State's Notice of Seizure and Forfeiture. State, in turn, filed a pleading entitled Motion to Enforce Plea Agreement.

¶ 7 In this latter motion, State alleged it had entered into a "plea agreement" with Appellants whereby [a] State would dismiss the criminal charges, [b] Appellants would be released from jail, [c] Appellants would agree to the forfeiture of $11,800.00, and [d] counsel for Appellants would receive, as attorney fees, $5,000.00 of the money held by State. State argued in its motion that Appellants had benefitted from the agreement by being released from confinement and having the charges dismissed, and asked the trial court to compel them to comply with the agreement. It appears from the record State's Motion to Enforce Plea Agreement was heard the day after it was filed without written response by Appellants.

¶ 8 The trial court granted State's Motion to Enforce Plea Agreement. However, the court made no findings regarding the agreement itself. It found, without specifying what the evidence was, "there is sufficient

evidence to show that said property was used in violation of Title 63 Section 2–506(E)[1] as alleged in the State's Notice of Seizure and Forfeiture." The court, consistent with the agreement between the parties, ordered $11,800.00 forfeited, and $5,000.00 returned to Appellants, "through their attorney." Appellants, having retained new counsel, moved for a new trial.[2] The trial court denied that motion and Appellants bring this appeal.

¶ 9 Appellants assert several theories in support of their contention the trial court erred in failing to order the seized funds returned to them. We will discuss each individually, but note generally it is well established in our law "that courts abhor forfeiture." *Pirkey v. State ex rel. Martin,* 1958 OK 153, 327 P.2d 463. *See also, e.g. State ex rel. Dept. of Public Safety v. 1985 GMC Pickup, Serial No. 1GTBS14EOF2525894, OK Tag No. ZPE852,* 1995 OK 75, 898 P.2d 1280. Statutes authorizing forfeiture of private property are to be strictly construed, and forfeiture will not be allowed except where required by clear statutory language. *Id.,* at 1282.

¶ 10 Although not stated as a primary proposition of trial court error, Appellants argue the troopers detention of them, the search of the car, and the seizure of their property was illegal. These issues were not, however, raised as error in Appellant's motion for new trial and therefore cannot be raised here on appeal. Rule 17, Rules for District Courts.

¶ 11 Appellants also assert their agreement with State was void as violative of the Oklahoma Constitution's prohibition on the sale of justice. Article 2, § 6 of Oklahoma's Constitution provides, among other things, "The courts of justice of the State shall be open to every person, ...; and right and justice shall be administered without *sale,* denial, delay or prejudice." (Emphasis added). Appellants cite *Clift v. State,* 1985 OK CR 135, 708 P.2d 342, in support of their assertion.

¶ 12 In *Clift,* the defendant entered into a plea bargain whereby he would, in part, pay $2,000.00 into the Caddo County Drug Fund. This Fund was authorized under 63 O.S.1981 § 2–506, part of the Act, and was administered under that section by the district attorney in his discretion. The Court of Criminal Appeals found the district attorney had no authority, however, to place money in the Fund other than that gained through the forfeiture statutes. The *Clift* Court's concern was allowing district attorneys to divert funds, through the plea bargain process, from the general fund into one they control exclusively. In the absence of authority to expand the drug fund, they found this practice creates a condition which could result in a violation of Article 2, § 6.

¶ 13 *Clift* may be distinguished factually from the matter before us. In *Clift* the $2,000.00 was not seized and made subject to forfeiture as was the case here, but was to be effectively in lieu of a fine, which would be paid into the general fund. In the present case, the money *was* seized and a Notice of Seizure and Forfeiture relating to the funds was filed. The agreement was that Appellants would not object to forfeiture. Under § 2–506, as noted above, the forfeited funds could properly be placed in the district attorney's discretionary drug fund. There was no diversion of funds as the Court of Criminal Appeals found constitutionally objectionable in *Clift.* The only question here was not where the funds would go, but whether they would be forfeited. There is no merit to Appellants' contention the district attorney "sold" justice through the plea bargain process.

¶ 14 Appellants also complain the trial court erred in not conducting an evidentiary hearing before ordering the forfeiture. They assert such a hearing is mandated by 63 O.S. Supp.1997 § 2–506(E) and (F). State admits an evidentiary hearing is required under § 2–506(E), before the court may order forfeiture by default, but argues a hearing may

---

1. We note § 2–506(E) provides only for a hearing before forfeiture by default.

2. While entitled Petition for Re–Hearing, Appellants' motion will be deemed a Motion for New Trial. Rule 17, Rules for District Courts, 12 O.S.1991, Chap. 2. App. 1.

be waived where, such as here, an answer has been filed. We agree.

¶ 15 Section 2–506(E) provides, if no verified answer has been filed, "the court shall hear evidence upon the fact of the unlawful use and shall order the property forfeited to the state, if such fact is proved." Section 2–506(F) requires that where a verified answer is filed, "the forfeiture proceeding shall be set for hearing." There is nothing in the latter section, or elsewhere in the Act, dictating against a respondent claimant waiving a hearing. While Appellants argue lack of an evidentiary hearing would deprive them of due process, even a fundamental right may be waived. *See, Seymour v. Swart,* 1985 OK 9, 695 P.2d 509; *Kennedy v. State,* 177 Okla. 79, 58 P.2d 139; *Valega v. City of Oklahoma City,* 1988 OK CR 101, 755 P.2d 118. The more relevant question is whether Appellants made a binding waiver of their right to a hearing.

¶ 16 Property rights have been recognized as fundamental rights. *Nucholls v. Board of Adjustment of City of Tulsa,* 1977 OK 3, 560 P.2d 556. Similarly, the Oklahoma Supreme Court has held, "[o]ne of the functions of this State's Constitution Due Process Clause is to protect citizens against arbitrary acts of the state which destroy or adversely affect private property interests". *Umholtz v. City of Tulsa,* 1977 OK 98, 565 P.2d 15. Typically, due process is invoked to assure rights are not taken by governmental authority without notice and the opportunity for hearing. *Black v. Ball Janitorial Service, Inc.,* 1986 OK 75, 730 P.2d 510. Accordingly, unless waived, Appellants were entitled to a hearing before their property could be taken by State.

¶ 17 State contends Appellants waived their right to a hearing by the terms of the "plea agreement". Appellants insist, to the contrary, they did not knowingly and voluntarily enter into a valid, enforceable plea agreement. They assert that before the agreement they were not informed of their constitutional rights in either the criminal or forfeiture cases. In *Faulkenberry v. Kansas City Southern Ry. Co.,* 1979 OK 142, 602 P.2d 203, the Supreme Court stated:

A waiver is defined as the voluntary or intentional relinquishment of a known right. The party invoking it as a bar is required to show that the person against whom the bar is asserted did, at the time of the transaction, have knowledge, actual or constructive, of the existence of his rights and of all the material facts upon which they depended.... The fact that one knows his rights and intends to waive them *must plainly appear.* (Citations omitted) (Emphasis added).

¶ 18 Under *Faulkenberry,* State had the burden to establish in the trial court that Appellants knowingly waived their right to a hearing. That fact must be made to "plainly appear." Additionally, where, as here, the waiver is one of a fundamental right, a record showing an intelligent, competent and knowing waiver is *mandatory. Valega,* 755 P.2d at 119.

¶ 19 As we noted above, the trial court made *no* findings regarding the "plea agreement", much less any finding of a waiver of Appellants' right to a hearing. Notwithstanding the trial court's finding of sufficient evidence to show the property was used in violation of § "2–506(E)" (sic), because there was no evidentiary hearing it would appear the court could only have made its decision based on the agreement. In fact, the trial court's order compelled Appellants' performance of the agreement without the opportunity to be heard. That being the case, it was the trial court's duty to make a record of Appellants' knowing waiver of their right to a hearing. The trial court should have granted a new trial and either afforded Appellants a hearing or made the requisite record showing waiver. The trial court's failure to do so is reversible error.

¶ 20 REVERSED AND REMANDED to the trial court for further proceedings consistent with this opinion.

¶ 21 CARL B. JONES, C.J., concurs in result; ADAMS, J., concurs.